633 So.2d 207 (1993)
Sy J. ARCENEAUX
v.
Arnold C. HOWARD and State Farm Mutual Automobile Insurance Company.
No. 92 CA 1310.
Court of Appeal of Louisiana, First Circuit.
November 24, 1993.
Writ Denied February 11, 1994.
*208 Jerald P. Block, Keith J. Labat, David M. Richard, Thibodaux, for plaintiff-appellant Sy J. Arceneaux.
Maurice P. Mathieu, Mathieu & Dagate, Houma, for defendants-appellees Arnold C. Howard and State Farm Mut. Ins. Co.
Before WATKINS, SHORTESS and FOGG, JJ.
SHORTESS, Judge.
Sy J. Arceneaux (plaintiff) filed this action against Arnold C. Howard and State Farm Mutual Automobile Insurance Company (defendants) for injuries resulting from a car accident. After a bench trial, the trial court awarded plaintiff $2,781.00 in damages. Plaintiff appealed. The sole assignment of error is that the trial court legally erred by not applying the legal presumption set forth in Housley v. Cerise, 579 So.2d 973 (La.1991).

A. Facts
Howard was traveling north on Louisiana Highway 1 in Lafourche Parish on November 7, 1989, when he lost control of his vehicle. Howard's pickup crossed the center line, continued to the southbound shoulder, then re-entered the roadway in the southbound lane. Plaintiff was traveling south on Highway 1 and unavoidably collided with Howard's pickup truck.
Plaintiff was taken by ambulance to Thibodaux General Hospital where he was treated by an emergency room physician. He complained of head, neck, and back pain. Ten days later, on November 17, plaintiff experienced a seizure, which witnesses described as turning his head to the right, falling backward, becoming stiff, and beginning to shake. He was taken to Thibodaux General for further testing, which was inconclusive. In late 1989, plaintiff was treated by New Orleans neurologist Gregory Ferriss. Approximately *209 14 months later, on January 17, 1991, plaintiff suffered another seizure. Ferriss referred plaintiff to Lafayette neurologist Steven Snatic. Plaintiff has also consulted neurologist Maria Palmer to determine the origin of his seizures.
The trial judge ruled the seizures were not related to the wreck and awarded $2,000.00 in general damages and $781.00 in medical expenses. In oral reasons, the trial court stated:
In determining legal cause in a matter like this the Court must determine the proximity and the intensity of the seizures as [they] followed the incident. The medical testimony and the medical evidence and the medical history show that there [are] really no serious prior medical problems that this man had. However, the number of causes for seizures are almost infinite. Had this seizure occurred immediately after the accident in a closer proximity to the accident and had been more intensity and more duration (sic) in connection with the accident the Court would find that these seizures are connected to the accident. This Court cannot find that because all it has is a statement of one doctor saying this is a mere possibility and then they enumerate hundreds, literally hundreds, of intervening causes. Therefore the Court has to prove (sic) that because of the evidence that was presented to it the plaintiff could not prove most probably that the seizures were connected with the accident.

B. Causation and the Housley presumption
Housley was a personal injury case in which a plaintiff who was six-months pregnant slipped and fell on the defendant's stairway, which caused her amnion to rupture, which in turn caused her to undergo an emergency caesarean section four days later. The supreme court found the medical evidence was clear that plaintiff's fall could possibly have caused her amnion to rupture. The court, quoting Lucas v. Insurance Co. of N. America, 342 So.2d 591, 596 (La.1977), stated:
[A] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
Housley, 579 So.2d at 980.

C. Was Housley applied and rejected?
In the present case, plaintiff argues the trial court legally erred by failing to apply the Housley presumption. The trial transcript shows that counsel for plaintiff argued Housley applied in this case. The trial judge was not immediately familiar with the presumption or the case. Defendants' counsel was not familiar with Housley, but was familiar with that "line of cases." The trial judge did not rule at that time on whether Housley applied. When he returned to rule on the case, he did not mention Housley, nor did he make any statements about a presumption in plaintiff's favor. The record does not contain reasons or factual findings which would support the inference that the judge considered and rejected the presumption. In fact, the presumption, if applied, could have provided the necessary causal link which the trial judge found lacking. Therefore, we cannot infer from the record that the trial judge decided the presumption did not apply.

D. Should Housley have been applied?
Having found the trial judge failed to apply the presumption stated in Housley, we must determine whether this case required him to do so, thereby constituting legal error.
Housley quoted a rule stated in Lucas v. Insurance Co. of N. America, 342 So.2d at 596, which was a worker's compensation case. The rule was first stated in Bertrand v. Coal Operators Cas. Co., 253 La. 1115, 221 So.2d 816 (1968), and subsequently restated by Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973), both worker's compensation cases. The presumption has been followed in many worker's compensation cases where a worker is in a work-related accident and cannot perform the *210 same work subsequent to the accident, but cannot prove with certainty the injuries were caused by the accident.
Prior to the Housley decision, this circuit and others already had extended the presumption to personal injury cases.[1]Housley leaves no uncertainty that the presumption is applicable to personal injury cases in which the medical evidence shows there is a reasonable possibility of causal connection between the accident and the medical condition. This court stated in Wisner v. Illinois Cent. Gulf R.R., 537 So.2d 740, 745 (La.App. 1st Cir. 1988), writ denied, 540 So.2d 342 (La.1989), that when two conditions are met(1) good health prior to the accident, and (2) medical testimony showing a reasonable possibility that the accident caused the injurythe plaintiff has established a prima facie case. Defendants must then rebut the prima facie case by showing some other particular incident could have caused the injury. If there is no rebuttal, the plaintiff has proven his case.
The first requirement of good health prior to the accident has been met. The trial court found and defendants did not dispute that plaintiff, who was 19 years old at the time of the accident, was in good health, had no previous head trauma, had no convulsions as a child, and had no family history of seizures.
The second requirement is less easily met in this case. A "reasonable possibility" standard is less than the "preponderance" standard. Housley, 579 So.2d at 980.
The medical testimony was much more certain under the Housley facts. Plaintiff's treating physician stated unequivocally that he would consider the fall a contributing factor in the premature rupture of the amnion. Furthermore, the experts unanimously agreed that trauma can cause a woman's amnion to burst. The supreme court found the treating physician's testimony sufficient to meet the "reasonable possibility" standard, especially in light of the experts' testimony.
In this case, none of the neurologists could state with any degree of certainty that he considered the accident to be a contributing factor in causing the seizures. However, all three based their opinions on an assessment of the seriousness of the accident as related by plaintiff. All three doctors agreed that head injuries can cause subsequent onset of seizures, but were of the impression that plaintiff's accident was relatively minor and not the type which triggered seizures.
The accident report and emergency room records show plaintiff was taken to the hospital on a stretcher and was examined for head, neck, and back injuries. The emergency room physician's notations show plaintiff had a "contusion" on his head and that he was given skull x-rays. However, the records also show the results were normal and he was alert. Plaintiff and his father testified plaintiff was disoriented and felt flu-like symptoms following the accident and continuing up to the first seizure. No other medical evidence substantiates this testimony.
The record shows plaintiff was traveling 30-35 miles per hour at impact, which was almost head on. Plaintiff's car was totaled. The impact was strong enough to break the buckle of his seat belt. He apparently hit the back of his head on a padded headrest, but was not aware of and showed no signs of injury to the front of his head.
Where medical experts and lay witnesses establish that a plaintiff sustained some injuries, the minimal force of the collision causing the injuries is of no material importance. Boykin v. Washington, 401 So.2d 488 (La.App.2d Cir.1981); Seegers v. State Farm Mutual Auto Ins. Co., 188 So.2d 166 (La.App.2d Cir.1966). This court declines to measure the degree of injuries in direct proportion to the force of a collision. The medical testimony and lay witnesses established the fact that plaintiff suffered a blow to the head and did sustain some injuries. The force of the collision is, therefore, of no material importance.
*211 The medical records from the accident are sufficient to establish a reasonable possibility that plaintiff's seizures were caused by the accident. The first seizure occurred only ten days after the impact and followed a continuous period of disorientation and "flu-like" symptoms, which began with the accident. A ten-day delay prior to the onset of the first seizure does not mean the seizure was not caused by the accident. Other cases have found causation where the first seizure occurred several months[2] to nearly one year[3] after an accident. We find the seizures were continuously connected to the other injuries he sustained in the accident. Although plaintiff presented no medical evidence to show that the type of impact to his head generally was a type of injury which would cause seizures, we do not find this fatal to his prima facie case. We believe plaintiff has met the minimal standard of a "reasonable possibility," such that a prima facie case was established and he should have been given the benefit of the legal presumption stated in Housley.

E. Did Plaintiff prove causation?
Because the trial court's legal error interdicted its finding on causation, the manifest error standard no longer applies, and we must determine de novo whether plaintiff proved causation based on a review of the entire record. Rosell v. ESCO, 549 So.2d 840, 844 n. 2 (La.1989); Epps v. City of Baton Rouge, 604 So.2d 1336, 1343 (La.App. 1st Cir.1992).
The burden of proof would have shifted had plaintiff been given the benefit of the Housley presumption and defendants would have been required to rebut plaintiff's case by showing some other particular incident could have caused the injury. Wisner, 537 So.2d at 745.
The trial court found one of plaintiff's doctors stated the blow to the head and the seizures might be related and stated it only as a "mere possibility." Then the court found "hundreds, literally hundreds of intervening causes."
We realize medicine is not an exact science and that it is not unusual for medical experts to be unwilling to state unequivocally the cause of a certain malady. Wisner, 537 So.2d at 745. And, as noted before, the doctors' opinions that the accident was relatively minor were not based on objective facts concerning the wreck. The opinions were based on plaintiff's description of the accident at the time of the seizures. Speculation does not create a realistic alternative cause. Dabog v. Deris, 93-C-0572, slip op. at 5, 625 So.2d 492, 495 (La.1993).
Furthermore, we do not find any evidence of intervening causes. Possible causes of seizures perhaps are infinite, as the trial court stated. Possible causes, however, are insufficient to rebut the prima facie case. To successfully rebut plaintiff's prima facie case, defendants were required to show a particular incident could have caused the seizures. There is no evidence in the record of any accident or later blow to the head which may have caused the seizures.
Defendants' entire case hinged on the "idiopathic" (undetermined) nature of seizures. This is exactly the kind of injury which the presumption stated in Housley benefitsone in which the plaintiff suffers symptoms closely following the accident but lacks proof of a causal connection. The presumption provides the required causal link, subject to rebuttal by the defendant.
In conclusion, the trial court was required under the facts of this case to give plaintiff the benefit of the legal presumption stated in Housley v. Cerise. The trial court legally erred in failing to apply the presumption, which would have shifted the burden of rebutting plaintiff's prima facie case to defendants. The record shows defendants presented no evidence to rebut the prima facie case; therefore plaintiff successfully established his case and should have recovered damages for the seizures.

*212 E. Damages
Plaintiff, who is now 22 years old, sustained an injury which may never go away. He has no way of knowing if, when, or where he may suffer seizures again. He will be required to take medication at least five years, and perhaps a lifetime, to control the possibility of another seizure.
Plaintiff was awarded $781.00 in special damages, which reflected medical expenses for medical treatment immediately following the accident, but excluding any expenses connected to treatment of the seizures. We add to that amount $1,961.00, which reflects expenses plaintiff incurred in connection with treatment of the seizures, making a total of $2,742.00.
The only evidence of future medical expenses introduced at trial was the amount plaintiff may be required to spend on medication. He is currently taking 300 milligrams of Dilantin a day. The three doctors did not agree on how long plaintiff may be required to remain on the medication. Palmer's opinion was that plaintiff should remain on it the rest of his life. Snatic, under whose care plaintiff remains, stated that he would keep plaintiff on Dilantin at least two to five years, then may consider taking him off of it if he has not suffered any more seizures, but that it could be a permanent aspect of plaintiff's life. Assuming plaintiff remains on the medication five years, the future medical expense would be approximately $900.00; however, if plaintiff must take it for a lifetime, the expense would be approximately $7,475.40. Plaintiff requests $3,000.00 to compensate for future medical expenses, which we find adequate given the fact that both Palmer and Snatic agreed the possibility is great, but not certain, that plaintiff may be required to take the medication for the remainder of his life.
Plaintiff also was awarded $2,000.00 in general damages. We add to that award $40,000.00.
Therefore, we reverse the judgment of the trial court and render judgment in favor of plaintiff Sy Arceneaux and against defendants Arnold C. Howard and State Farm Mutual Insurance Company in the sum of $47,742.00, together with legal interest thereon from date of judicial demand until paid. Defendant is cast with all costs of trial and appeal.
REVERSED AND RENDERED.
NOTES
[1] Simpson v. Caddo Parish School Board, 540 So.2d 997 (La.App.2d Cir.1989) (school bus accident); Wisner v. Illinois Cent. Gulf R.R., 537 So.2d 740 (La.App. 1st Cir.1988), writ denied, 540 So.2d 342 (La.1989) (plaintiff exposed to toxic chemicals); Heath v. Northgate Mall, Inc., 398 So.2d 132 (La.App. 3d Cir.1981) (plaintiff fell in rain-filled hole).
[2] Bush v. Winn Dixie, 573 So.2d 508 (La.App. 4th Cir.1990), writ denied, 578 So.2d 930 (La. 1991).
[3] Rosell v. ESCO, 558 So.2d 1360 (La.App. 4th Cir.), writ denied, 561 So.2d 105 (La.1990).